# EXHIBIT B
# PLAINTIFF'S ORIGINAL PETITION FILED IN DISTRICT COURT ON FEBRUARY 13, 2023

Electronically Filed
2/13/2023 11:10 AM
Penny Clarkston, Smith County District Clerk
Reviewed By: Donna Lee

CAUSE NO. 23-0361-B

| | | |
|---|---|---|
| CHRISTOPHER JOSEPH SMITH <br> AND JUDITH ANN SMITH | § <br> § <br> § | IN THE DISTRICT COURT OF |
| VS. | § <br> § | SMITH COUNTY, TEXAS |
| HIPPO ANALYTICS INC D/B/A <br> HIPPO INSURANCE SERVICES, <br> SPINNAKER INSURANCE COMPANY <br> AND ALEXIS WILKINS | § <br> § <br> § <br> § | 114th JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE:

COMES NOW Plaintiffs Christopher Joseph Smith and Judith Ann Smith complaining herein of Defendants Hippo Analytics Inc d/b/a Hippo Insurance Services, Spinnaker Insurance Company and Alexis Wilkins, and, for cause of action, state:

### I.

### RULE 47 STATEMENT AND DISCOVERY PLAN

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief of not more than $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, as detailed below. Therefore, Discovery shall be conducted under Level 2, Rule 190.3

### II.

### PARTIES

Plaintiff Christopher Joseph Smith resides in Tyler, Smith County, Texas. Plaintiff can be identified by his Social Security Number of XXX-XX-2091.

Plaintiff Judith Ann Smith resides in Tyler, Smith County, Texas. Plaintiff can be identified by her Social Security Number of XXX-XX-0255.

Defendant Hippo Analytics Inc d/b/a Hippo Insurance Services is an entity who is duly authorized to do business in the State of Texas and may be served with service of process by and through its registered agent for service, **Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 East 7th Street, Suite 620 in Austin, Texas 78701.**

Defendant Spinnaker Insurance Company is an entity who is duly authorized to do business in the State of Texas and may be served with service of process by and through its registered agent for service, **Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 East 7th Street, Suite 620 in Austin, Texas 78701.**

Defendant Alexis Wilkins is a resident of Austin, Travis County, Texas and can be served with process at **522 Congress, Suite 500 in Austin, Texas 78701.**

## III.

## JURISDICTION AND VENUE

The subject matter in controversy is within the jurisdictional limits of this court.

This court has personal jurisdiction herein because Defendants are a Texas company.

Venue in Smith County is proper in this cause pursuant to Section 17.56 of the Texas Business and Commerce Code and Texas Insurance Code.

## IV.

## FACTS

On February 15, 2021, a winter storm caused pipes to burst at Plaintiffs' residence located at 12493 CR 384 in Tyler, Smith County, Texas which resulted in extensive damage to the

residence.

At all relevant times, Plaintiffs were insured by a homeowner's policy number HTX-0140289-02 issued by Defendant Spinnaker, managed/administered by its parent corporation, Defendant Hippo Insurance Services. The assigned adjuster, Defendant Alexis Wilkins, works for Defendant Hippo Insurance Services. Collectively, all defendants are referred to herein as "Hippo".

On or about February 15, 2021 Plaintiffs' home was damaged by a frozen/bursted pipe. The damage included the foundation of the home, causing it to "heave", and resulted in structural and mold covered losses. Plaintiffs reported the claim, and Hippo acknowledged and "set up" the claim by February 27, 2021. During the course of handling the claim, Hippo hired "Team One Adjusting Services" to appraise the damage. On April 12, 2021 Team One submitted it's estimates, and on the following day, April 13, 2021, Hippo confirmed that it issued payments: $4,097.42 for damage to an outbuilding and $43,505.01 for damage to the home structure (the net amount after subtracting a $1,000 deductible) caused by the pip freeze. Hippo also issued a $8,714.86 payment for mold remediation services. On April 27, 2021, however, Hippo denied Plaintiffs' claims of foundation damage, claiming that their agent, Donon Engineering, which conducted its inspection on March 23, 2021, concluded that the foundation and resulting damage was due to "settling" and not to the plumbing leak.

In response to the denial, Plaintiffs retained Bill Douglas, P.E. with Foundation Element LLC to inspect the cause and extent of the foundation damage. Plaintiffs' engineer confirmed that the foundation damage was caused by the plumbing leak. Based on Bill Douglas' analysis, Plaintiffs retained Kyle Johns Homes to prepare an estimate to repair the structural damage caused by the leak. In July, Plaintiffs forwarded that estimate totaling $103,950.00 to Hippo.

Plaintiffs went back and forth with Hippo until October 1, 2021, at with time Hippo invoked the "Appraisal Clause" in the policy. Although Plaintiffs continued to seek reimbursement for the ALE and contents damages, on October 1, 2021 Hippo responded to those claims via email which simply read: "it was [sic] all be handled under the appraisal."

APPRAISAL PROCESS

On October 1, 2021 (228 days after the date of loss), Hippo formally invoked the appraisal provision of the policy. The particular appraisal clause reads:

If you and we fail to agree on the amount, cause or extent of the loss, either may demand an appraisal of the loss. ... The appraisers will separately set the amount of loss."

Hippo selected Robert Stephenson as its appraiser. Plaintiffs selected Lorinda Mikesell as theirs. Plaintiffs' appraiser set upon her task, appraising the damage to the property. Stephenson, on the other hand, did no such thing. Instead, Hippo provided him with Donan's engineering report that concluded the foundation (and resulting structural) damage was caused by "settling". Plaintiffs appraiser was unable, therefore to compare any valuations of the damage, merely because Stephenson did not undertake any valuation efforts at all. Instead, Stephenson hired a plumbing company to test for water leaks which formed the basis for the original claim of water damage and mold, to conclude that there was no water leak to begin with. Thus, Stephenson never attempted to determine the extent or value of the loss at all, there was no disagreement about the values, yet Hippo still refused to pay the full amount of the claim. Ultimately, the Umpire, took it upon himself to retain a plumbing company to identify the leaks, then conducted his own valuation of the loss.

On April 26, 2022 Hippo sent a reservation of rights claiming that it was "currently investigating this loss" (435 days since the date of loss), and due to Plaintiffs "non-cooperation",

Hippo asserted "coverage questions now exist". This despite the obvious fact that damages directly caused by the water leak (mold remediation, damage to walls, etc.) were paid over a year prior to this date, and the appraisal was only invoked to determine the further extent of the damage to the foundation.

The Umpire, Shannon Cook, ultimately appraised the Replacement Cost Value ("RCV") of the loss to the dwelling at $89,391.01, and the Actual Cash Value ("ACV") at $71,319.44 on December 7, 2022 (660 days after the date of loss). The Umpire specifically did NOT appraise damage to other structures, contents, or ALE. On December 13, 2022, Hippo sent a check for $18,103.67 and explained its math: RCV award $89,391.01, less depreciation $18,071.57, less deductible $1,000 & Prior payments $52,215.87.

Hippo would have Plaintiffs believe that it is incapable of even simple mathematics. First, Hippo is aware that Plaintiffs' policy contains a recoverable depreciation because it specifically waived the same when it paid the undisputed portion of the claim. It invites Plaintiffs to forward proof of the costs of repairs to recover the depreciation, knowing full well that the policy contains a two-year limitation on the same. Plaintiffs obviously have not had the opportunity to act, because of Hippo's 666 day delay. The $1,000 deductible was already taken out of the original partial payment of the claim, and so the additional deduction is clearly fraudulent. Finally, of the "prior payments" deducted from the Umpire's award, only $43,505.01 was previously paid for damages to the dwelling (which was the Umpire's sole focus), which is a difference of $8,710.86. Hippo has never paid Plaintiffs' claims for Additional Living Expense, or for damaged contents, even though Plaintiffs sent proof of such to Hippo with the original claim, and Hippo has never denied or accepted those claims, and did not seek appraisal of those covered losses.

V.

CONDITIONS PRECEDENT

All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred.

VI.

CIVIL CONSPIRACY

With regard to each an every cause of action named herein below, Plaintiffs aver that Defendants acted in concert, each performing separate overt acts to produce the intended wrong. Hippo, by and through its agents, adjusters, employees, and client/subsidiary insurer are each liable for the acts of one another.

VII.

DECEPTIVE TRADE PRACTICES DEFENDANTS HIPPO AND SPINNAKER

Plaintiffs would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged hereinbelow.

Unconscionable Action or Course of Action. Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree.

Violations of Section 17.46(b). Defendants violated Section 17.46(b) of the Texas Business and Commerce Code, in that Defendants:

    (A)    caused confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

    (B)    advertised goods or services with intent not to sell them as advertised;

    (C)    represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

    (D)    failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

<u>Unfair Claim Settlement Practices</u>. Defendants engaged in unfair claim settlement practices prohibited by Section 541.060 of the Texas Insurance Code, to wit:

    (A)    misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

    (B)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

    (C)    failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim; and

    (D)    refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

<u>Misrepresentation of Insurance Policy</u>. Defendants misrepresented an insurance policy as prohibited by Section 541.061 of the Texas Insurance Code, to wit:

    (A)    making an untrue statement of material fact;

Christopher Smith
Original Petition                                                                                Page 7

(B)   failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(C)   making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact; and

(D)   failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Texas Insurance Code.

Unfair and Deceptive Acts or Practices. Defendants also engaged in unfair and deceptive acts or practices prohibited by Subchapter B, Chapter 541, Texas Insurance Code, to wit:

(A)   either:

   (1)   making, issuing, or circulating, or causing to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

      (a)   the terms of the policy;

      (b)   the benefits or advantages promised by the policy; or

      (c)   the dividends or share of surplus to be received on the policy;

   (2)   making a false or misleading statement regarding the dividends or share of surplus previously paid on a similar policy;

   (3)   making a misleading representation or misrepresentation regarding:

      (a)   the financial condition of an insurer; or

      (b)   the legal reserve system on which a life insurer operates;

   (4)   using a name or title of a policy or class of policies that misrepresents the true nature of the policy or class of policies; or

(5) making a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy; and

(B) making, publishing, disseminating, circulating, or placing before the public or directly or indirectly causing to be made, published, disseminated, circulated, or placed before the public in a newspaper, magazine, or other publication, or in the form of a notice, circular, pamphlet, letter, or poster, or over any radio or television station, or in any other manner an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

Producing Cause. Plaintiffs would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages more fully described hereinbelow.

Reliance. Plaintiffs would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code and Chapter 541 of the Texas Insurance Code were relied upon by Plaintiffs to Plaintiffs' detriment.

## VIII.

## COMMON LAW FRAUD OF DEFENDANTS HIPPO AND ALEXIS WILKINS

Plaintiffs further show that these Defendants made material false representations to Plaintiffs with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiffs, and that Plaintiffs relied on these representations to her detriment.

Plaintiffs would further show that Defendants concealed or failed to disclose material facts within the knowledge of Defendants, that Defendants knew that Plaintiffs did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Plaintiffs to enter into the transaction made the basis of this suit by such concealment or failure to disclose.

As a proximate result of such fraud, Plaintiffs sustained the damages described more fully hereinbelow.

## IX.

### BREACH OF CONTRACT DEFENDANTS HIPPO AND SPINNAKER

Plaintiffs would further show that the actions and/or omissions of these Defendants as described hereinabove constitute breach of contract, which proximately caused the direct and consequential damages of Plaintiffs described hereinbelow, and for which Plaintiffs hereby sue.

## X.

### ECONOMIC AND ACTUAL DAMAGES

Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove which include but are not limited to:

(A)  Out-of-pocket expenses.

(B)  Loss of use.

(C)  Loss of policy benefits.

(D)  Costs of appraisal.

## XI.

## DAMAGES FOR MENTAL ANGUISH

Plaintiffs would further show that the false, misleading and deceptive acts, practices and/or omissions described hereinabove were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendants Hippo had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

As a result of such acts, practices and/or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs hereby sue in an amount in excess of the minimum jurisdictional limits of this Court.

## XII.

## MULTIPLE DAMAGES

As alleged hereinabove, Plaintiffs would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants Hippo had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

Plaintiffs further aver that such acts, practices, and/or omissions were committed "intentionally" in that Defendants Hippo specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

## XIII.

## ATTORNEY'S FEES

Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Section 154.152(1) of the Texas Insurance Code; (c) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (d) common law.

## XIV.

## EXEMPLARY DAMAGES

Because Defendants' actions were committed fraudulently as alleged herein, Plaintiffs seeks an award of exemplary damages to deter this type of course and conduct in the future.

## XV.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity, whether pled or unpled.

Respectfully Submitted,

*[signature]*

DARREN GRANT, Lead Counsel
State Bar No. 24012723
**MATTHEW B. FLANERY**
State Bar No. 24012632
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
Darren@GFTexas.com
(903) 596-8080 (Telephone)
(903) 596-8086 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Darren Grant
Bar No. 24012723
Darren@GFTexas.com
Envelope ID: 72691290
Status as of 2/13/2023 12:38 PM CST

Associated Case Party: ChristopherJosephSmith

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Darren Grant | | Darren@GFTexas.com | 2/13/2023 11:10:26 AM | SENT |